1  JEFFREY N. WILLIAMS (SBN 274008)
   jwilliams@wfslaw.com
2  WARGO, FRENCH & SINGER LLP
   601 S. Figueroa St., Suite 4625
3  Los Angeles, CA 90017
   Tel: (310) 853-6300
4  Fax: (310) 853-6333
5
   Attorney for Defendants
6  BuzzFeed, Inc. and Complex Media, Inc.

7              **UNITED STATES DISTRICT COURT**

8             **CENTRAL DISTRICT OF CALIFORNIA**

9

10  CY KUCKENBAKER, an individual,            Case No. 2:22-cv-06910-MCS-SK

11              Plaintiff,                     **NOTICE OF MOTION AND
                                               MOTION FOR PARTIAL
12       v.                                    SUMMARY JUDGMENT
                                               PURSUANT TO FED. R. CIV. P. 56**
13
    BUZZFEED, INC., a Delaware corporation;    Hon. Mark C. Scarsi
14  and COMPLEX MEDIA, INC., a Delaware
    corporation,                               Date: August 21, 2023
15                                             Time: 10:00 a.m.
                Defendants.                    Courtroom 7C
16
17                                             First Am. Compl. Filed: July 9, 2023
18
19
20
21
22
23
24
25
26
27
28

**TO ALL PARTIES HEREIN AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on August 21, 2023, at 10:00am in Courtroom 7C of the U.S. District Court for the Central District of California, 350 West 1st Street, Los Angeles, California 90012, Defendants BuzzFeed, Inc. ("BuzzFeed") and Complex Media, Inc.  ("Complex") shall move and hereby move the Court for partial summary judgment pursuant to Fed. R. Civ. P. 56.  This motion is made on the following grounds:

- BuzzFeed is not liable for any of the claims asserted by Plaintiff in this case because BuzzFeed did not publish or authorize the publishing of the two social media posts that are the subject of this case.  BuzzFeed merely acquired Complex years after the posts were published, and remains a separate and distinct legal entity from Complex.

- Complex did not engage in "willful" copyright infringement within the meaning of 17 U.S.C. § 504.

- Complex did not edit Plaintiff's work or otherwise remove or falsify any copyright management information ("CMI") from Plaintiff's work, and thus cannot be liable on Plaintiff's second cause of action under the Digital Millennium Copyright Act ("DMCA").[1]

This Motion is made following the conference of counsel pursuant to L.R. 7-3 in which the parties thoroughly discussed the substance and potential resolution of the parties' respective summary judgment motions.  The result of that conference was a stipulation by which the parties agreed to certain undisputed facts, Plaintiff agreed to an entry of judgment for Defendants on Plaintiff's third cause of action for unfair competition, and Defendants agreed to a stipulation of liability on Plaintiff's first

---

[1] Because judgment should be entered in favor of BuzzFeed in its entirety, Defendants refer to Complex when discussing arguments relating to willful infringement or removal of CMI.  In the alternative, however, should the Court not enter judgment for BuzzFeed in its entirety, Defendants request that the Court enter judgment for both Defendants on the issues of willful infringement and removal of CMI.

cause of action for copyright infringement (though the parties reached no stipulation on the issue of willfulness, which is the subject of this Motion).  *See* ECF No. 42.

This Motion is based upon this Notice of Motion and attached Memorandum of Points and Authorities, the attached Declaration of Aia Adriano, the attached exhibits in support (including the sworn Interrogatory responses by Plaintiff and Complex), the deposition testimony of the witnesses in this case (transcripts of which are not yet available), the complete files and records in this action, and such other matters as the Court may allow.

Dated:  July 17, 2023                    WARGO, FRENCH & SINGER LLP

By:  */s Jeff Williams*
       JEFFREY N. WILLIAMS

Attorneys for Defendants BuzzFeed, Inc. and Complex Media, Inc.

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................. 1

I.      INTRODUCTION ............................................................................................. 1

II.     STATEMENT OF FACTS ............................................................................... 3

        A.      Background ........................................................................................... 3

        B.      Factual Matters .................................................................................... 4

III.    LEGAL STANDARD ...................................................................................... 6

IV.     ARGUMENT .................................................................................................... 7

        C.      BuzzFeed Did Not Engage in the Allegedly Wrongful Conduct ............. 8

        D.      Complex's Infringement Was Not Willful Under the Copyright Act ...... 9

        E.      Complex Never Edited, Removed or Falsified CMI ............................. 12

V.      CONCLUSION .............................................................................................. 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bangkok Broadcasting & TV Co., Ltd. v. IPTV Corp.*,
    742 F. Supp. 2d 1101 (C.D. Cal. 2010) .................................................. 11

*BMG Rights Mgmt. (US) LCC v. Cox Commc'ns, Inc.*,
    881 F.3d 293 (4th Cir. 2018) ................................................. 12

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ............................................................... 9, 10

*Davis v. Pinterest, Inc.*,
    No. 19-CV-07650-HSG, 2021 WL 879798 (N.D. Cal. Mar. 9, 2021) ................. 14

*Erickson Prods., Inc. v. Kast*,
    921 F.3d 822 (9th Cir. 2019) ................................................. 12, 13

*Fashion Nova, LLC v. Blush Mark, Inc.*,
    No. CV22-6127-RSWL-RAOx, 2023 WL 2540418 (C.D. Cal. Mar.
    15, 2023) ............................................................................. 15

*Global-Tech Appliances, Inc. v. SEB S.A.*,
    563 U.S. 754 (2011) ........................................................... 12

*Krechmer v. Tantaros*,
    747 F. App'x 6 (2d Cir. 2018) ............................................. 15

*Logan v. Meta Platforms, Inc.*,
    ___ F. Supp. 3d ___, 2022 WL 14813836 (N.D. Cal. Oct. 25, 2022) .................. 15

*Ludvarts, LLC v. AT&T Mobility*,
    LLC, 710 F.3d 1068 (9th Cir. 2013) ...................................... 12

*Lujan v. Nat'l Wildlife Fed'n*,
    497 U.S. 871 (1990) ........................................................... 10

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ........................................................... 10

*McIndoe v. Huntington Ingalls Inc.*,
    817 F.3d 1170 (9th Cir. 2016) ............................................. 15

*Peer Int'l Corp. v. Pausa Records, Inc.*,
   909 F.2d 1332 (9th Cir. 1990) ................................................................. 12

*Schneider v. YouTube, LLC*,
   ___ F. Supp. 3d ___, 2023 WL 3605981 (N.D. Cal. May 22, 2023) ..................... 15

*Stevens v. Corelogic, Inc.*,
   899 F.3d 666 (9th Cir. 2018) ................................................................. 15

*Swinton v. Potomac Corp.*,
   270 F.3d 794 (9th Cir. 2001) ................................................................. 12

*Tucson Elec. Power Co. v. Pauwels Canada Inc.*,
   651 F. App'x 681 (9th Cir. 2016) ............................................................ 14

*United States v. Bestfoods*,
   524 U.S. 51 (1998) ....................................................................... 10, 11

**Statutes**

17 U.S.C. § 504 ............................................................................. 4

17 U.S.C. § 504(c)(1) ...................................................................... 12

17 U.S.C. § 1202(a), (b) ................................................................... 14

**Other Authorities**

Fed. R. Civ. P. 30(b)(6) ................................................................... 10

Fed. R. Civ. P. 56(c) ................................................................... 9, 10

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

This action involves an edited version of a video reflecting various airplanes landing at San Diego Airport.  Complex posted this edited video on its Instagram and TikTok accounts in 2019.  At the time, the video was circulating widely throughout the internet, and in fact, a Complex employee obtained the already-edited version of the video from another popular and viral Instagram account, @ifyouhigh, before posting it.  The employee did not have any reason to think it likely that Plaintiff would object to the posting of this widely-circulating viral video as copyright infringement and even "tagged" Plaintiff in the Instagram post to provide him notice.  Of course, as soon as Plaintiff issued a demand letter relating to the Instagram post, Complex deleted it. Plaintiff did not identify the TikTok post in his demand letter and it went unnoticed by both sides until Complex realized, while investigating in response to Plaintiff's discovery requests in this litigation, that the TikTok post was still in existence. Complex then promptly deleted the TikTok post and gave notice to Plaintiff.

Plaintiff brought suit against Complex as well as BuzzFeed—which acquired Complex in 2021, well after the posts in question were published—asserting claims for federal copyright infringement under the Copyright Act, removal or falsification of CMI under the DMCA, and state-law unfair competition relating to the alleged infringement.  Complex stipulated that its display of the edited version of Plaintiff's video was a (non-willful) violation of the Copyright Act.  Plaintiff stipulated to a judgment for Defendants on its state-law unfair competition claim.  *See* ECF No. 42.

Defendants now move for partial summary judgment on three issues and claims: (1) BuzzFeed is not and cannot be liable for any of the conduct in this case, all of which is attributable to Complex at a date before BuzzFeed even acquired Complex; (2) Complex's infringement of Plaintiff's copyright was not "willful" under 17 U.S.C. § 504; and (3) Complex did not remove or falsify CMI, and had no notice that Plaintiff's video had already been edited to remove his CMI before Complex accessed and re-

**1**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

1  posted it, so Complex cannot be liable to Plaintiff under the DMCA.  There is no triable
2  issue of fact with respect to any of these issues.

3      First, it is undisputed that BuzzFeed did not engage in any of the offending
4  conduct at issue in this case, and thus cannot be liable as a wholly separate entity that
5  merely acquired Complex years afterward.  Plaintiff argues that BuzzFeed should be
6  liable for Complex's infringement because Complex's TikTok post remained on public
7  display for a period of time after BuzzFeed acquired Complex in 2021, but has
8  articulated no theory as to why merely acquiring an ownership interest in another
9  company automatically makes the parent liable for the acts of the subsidiary, and his
10  argument is flatly inconsistent with basic corporate doctrine.

11      Second, it is undisputed that Complex did not willfully infringe on Plaintiff's
12  copyright.  The law requires that the defendant have actual knowledge that its conduct
13  constitutes copyright infringement or "willful blindness," meaning the defendant
14  subjectively believed that infringement was likely occurring and took deliberate actions
15  to avoid learning about the infringement.  Here, the Complex employee that obtained
16  and posted the edited video knew he was not supposed to post copyrighted content and
17  sought permission from content-holders when he had reason to believe there was a
18  claim of copyright at issue.  Plaintiff's video, however, was widely available on the
19  Internet at the time.  There is no evidence the employee had a subjective belief that
20  infringement was likely; in fact, the employee even "tagged" Plaintiff when he created
21  the post to provide him notice, an act flatly inconsistent with any intentional effort to
22  go behind Plaintiff's back and infringe his copyright.

23      Third, it is undisputed that Complex did not edit, remove or falsify any CMI that
24  originally appeared on the Video or that Complex had any intent to promote or conceal
25  infringement.  Rather, Complex re-posted a video that was already edited and there is
26  no evidence that the relevant employees ever saw the original video or Plaintiff's
27  Vimeo page.  In fact, the only affirmative evidence evinces a good faith attempt on
28  Complex's part to attribute the Edited Video to its original source, which negates a

finding of intent as required to prove a claim under the DMCA.   Accordingly, Defendants ask the Court to enter judgment for BuzzFeed in its entirety and to enter judgment for Complex on Plaintiff's claims of willful infringement and CMI removal under the DMCA.

## II.   **STATEMENT OF FACTS**

### A.   **Background**

Complex is a media and entertainment company that reports on popular culture, news, style, sneakers, food, and music.  Decl. of BuzzFeed, Inc. & Complex Media, Inc. ("Adriano Decl.") ¶ 2.  Complex publishes a wide range of print, audio, and visual media, which appears primarily through its website and YouTube channels.  *Id.* ¶ 3. The majority of this content is created and produced by Complex and includes news articles, pop culture commentary, talk shows, podcasts, coverage of live Complex events, and other Complex media.   *Id.*   Complex also maintains a wide range of accounts across third-party social media platforms, including Facebook, Instagram, Twitter, and TikTok, among others.  *Id.*  These accounts are controlled by members of the Complex Social team.  *Id.* ¶ 4.  The Social team's operations are managed by the Director of Social, who oversees a staff of deputy directors, senior editors, editors, and junior editors, as well as part-time interns and fellows who assist full-time staff.  *Id.*

Complex posts a mixture of original and third-party content to its social media accounts, the vast majority of which is created and produced by Complex or in conjunction with its brands and sponsors.  *Id.* ¶ 5.  The primary purpose of Complex's social media is to promote the Complex brand and organizations that it partners with, digitally distribute its original content, and drive online traffic to its website, which is the primary place where consumers access Complex's original content.  *Id.*

At all times relevant to this action, Complex has maintained written policies that govern the Social team's activity on Complex social media.  *Id.* ¶ 8.  Shortly after starting their role, all full-time Social employees are required to review the Rights

Clearance and Fair Use Policies from the Complex legal department, which are updated and recirculated to the Social team annually.  *Id.* ¶¶ 8–9.

Complex's rights training covers the basic features of copyright, licensing, infringement, fair use, and claims, as it relates to Complex's public use of third-party content.  *Id.*  As reflected in the training presentations given to employees, Social employees are required to clear the rights to specific content prior to its first public use, which generally requires permission from the original source if an employee wishes to use content from a third party.  *Id.*  Although Complex's explicit policy is that crediting or "tagging" is not sufficient in the event an employee believes content may be subject to a copyright, it is nonetheless encouraged if the poster wishes to attribute the content to a third-party source to make clear that Complex did not create the content and direct users to the source.  *Id.*

After Social team members have received training at the start of their employment, Social team members interact frequently with the legal department, and particularly the Rights and Clearances team, to ensure that content posted to Complex social media accounts does not infringe on any third-party rights.  *Id.* ¶ 10.  Social team members discuss these issues daily with one another when it comes to posting third party content, whether that content has been specifically licensed, whether that posting that content might qualify as fair use, and whether posting that content infringes a creator's copyright.  *Id.*  Based on their training and level of experience, Social team members are expected to use their best judgment in posting third-party content, and if unsure, consult a senior Complex employee or the legal department for advice.  *Id.*

**B.    Factual Matters**

Plaintiff alleges in this case that he posted a video entitled "Landings at San Diego Int Airport Nov 23, 2012" (the "Video") on his Vimeo and YouTube pages in 2012.  SUF ¶ 1.  The Video contained a beginning frame reading: "All landings at San Diego Int. Airport, Black Friday November 23, 2012 from 10:30am to 3:00pm, San Diego Study 1."  SUF ¶ 2.  The Video had an ending frame reading "cysfilm.com."  *Id.*

On or about August 19, 2019, an Instagram account called @ifyouhigh posted an edited version of Plaintiff's video that had removed the beginning and ending frames of the video (the "Edited Video"). SUF ¶ 3.[2] The caption of the post "tagged" Plaintiff by including his Instagram handle, @cysfilm. SUF ¶ 4. The @ifyouhigh post remained online from August 9, 2019, to at least February 2023. SUF ¶ 5.

On or about October 3, 2019, David Amaya, a Deputy Social Director and member of Complex's Social team, obtained the Edited Video from the @ifyouhigh Instagram account and posted it to Complex's Instagram account, @complex (the "Complex Instagram Account"). SUF ¶ 6. The caption of Mr. Amaya's post likewise "tagged" Plaintiff by including his Instagram handle, @cysfilm. SUF ¶ 7.

Also on or about October 3, 2019, Stefan Breskin, a part-time Social Fellow who had been hired as an intern in June 2019, cross-posted the Edited Video to the TikTok account @complex (the "Complex TikTok Account"). SUF ¶ 8. Shortly after joining Complex, Breskin had volunteered to his supervisor, Director of Social Arman Walia, that he could develop the Complex TikTok Account by "cross-posting" video content that had appeared on the Complex Instagram Account. (ECF No. 42 ¶ 4; Adriano Decl. ¶ 12). Before then, the Complex TikTok Account had been created but not utilized for any purpose, primarily because the platform was new in the social media industry, it exclusively used a vertical-video format that was not yet common on other platforms, and the Complex Social team had not determined any strategic purpose to use the account. (Adriano Decl. ¶ 11). Because the Complex Instagram Account was operated by full-time Social team members, who had been properly trained on Complex's rights and clearances policies relating to copyright, Mr. Walia allowed Breskin to cross-post content from the Complex Instagram Account to the Complex TikTok Account. SUF ¶ 9. Mr. Breskin was not allowed to post any third-party content that did not already

---

[2] Defendants produced the full video of the @ifyouhigh post in native format as COMPLEX NATIVE 00003, which is being provided to the Court separately along with a notice of lodging.

appear on the Complex Instagram or had not been cleared by the Director of Social or another senior Complex Social employee. SUF ¶ 10. Mr. Breskin's regular process in cross-posting content to the Complex TikTok Account was to download it from the Complex Instagram, copy the caption, and credit the third party source by either tagging the source's TikTok account or, if the third party did not have a TikTok account, using the general format "IG/[username]" to identify the third party's Instagram account. SUF ¶ 11. In short, Mr. Breskin simply cross-posted content from the Complex Instagram Account to the Complex TikTok Account.

On November 18, 2019, Complex received a demand letter from Plaintiff identifying the Complex Instagram Account and the Instagram post containing the Edited Video. SUF ¶ 12. The letter did not identify the Complex TikTok Account or the TikTok post containing the Edited Video. SUF ¶ 13. After realizing Plaintiff's claim to ownership of the video and his allegations of copyright infringement, Amaya promptly removed the October 3 Instagram post from public display on November 21, 2019. SUF ¶ 14. Amaya resigned his position with Complex in January 2020. In 2021, BuzzFeed acquired Complex, but the two companies remained separate and independent legal entities. SUF ¶¶ 19-20.

Plaintiff filed this action approximately three years after Complex received notice of Plaintiff's claim to infringement on September 23, 2022. ECF No. 1. While investigating the facts of this case during discovery, Complex discovered the Edited Video on the Complex TikTok Account and removed it from public display on April 3, 2023. SUF ¶ 15. Complex notified Plaintiff of the existence of the same in its written Interrogatory responses. ECF No. 42, ¶ 7.

## III.   LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Indeed, summary judgment should be entered after adequate time for discovery and upon

motion against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.*

Once the moving party has shown the absence of a genuine issue of material fact, the non-movant cannot avoid summary judgment by resting on mere assertions—unsupported by record evidence—that the facts are sufficient to support his or her claims. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Instead, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## IV.  **ARGUMENT**

As an initial matter, in an effort to the narrow the claims between the parties, Defendants have stipulated to Complex's liability for copyright infringement, though for the reasons described below, BuzzFeed is not liable for any claims in this case and Complex is entitled to summary judgment that its infringement was not "willful." Because discovery is not yet complete,[3] Defendants may supplement the supporting

---

[3] As of filing, Defendants have only a rough-draft copy of Aia Adriano's deposition as the corporate representative of Complex and BuzzFeed under Fed. R. Civ. P. 30(b)(6). Defendants not yet received deposition transcripts, either in rough or final form, for Stefan Breskin and David Amaya. Mr. Amaya's deposition took place on July 12, 2023, but Defendants were not afforded a full and fair opportunity to cross-examine him in the time allotted (largely because Plaintiff failed to provide advance notice of the subpoena served upon him, as required by Rule 45, and apparently negotiated a time limit for the deposition with Mr. Amaya's counsel without notifying or involving Defendants' counsel of the same). A continued deposition is currently scheduled for July 19, 2023, and Plaintiff's deposition is scheduled for July 20, 2023.

documents to the motion as additional record evidence becomes available. Nonetheless, based on the available evidence, there is not a genuine dispute of material fact as to any of the following claims.

### C.   BuzzFeed Did Not Engage in the Allegedly Wrongful Conduct

As a general rule, a "parent corporation . . . is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (internal citations omitted). "Only in unusual circumstances will the law permit a parent corporation to be held either directly or indirectly liable for the acts of its subsidiary." *Bangkok Broadcasting & TV Co., Ltd. v. IPTV Corp.*, 742 F. Supp. 2d 1101, 1120 (C.D. Cal. 2010) (citing *E. & J. Gallo Winery v. EnCana Energy Servs., Inc.*, No. CV F 03–5412 AWI LJO, 2008 WL 2220396, at *5 (E.D. Cal. May 27, 2008) (citation omitted)). "Among the 'unusual circumstances' where law will hold a parent corporation liable for the acts of a subsidiary are: (1) where the circumstances of the organization of the two entities are such that the corporate form should be disregarded (often referred to as 'alter ego' liability); (2) where the subsidiary acts as an agent of the parent corporation; and (3) where the parent corporation aids, abets or ratifies the acts of the subsidiary corporation." *Id.* (citation omitted).

Here, there is no basis in law or fact to support the assertion that BuzzFeed, as a separate and independent corporate entity from Complex, is liable for any infringing activity.   Under well-established precedent, BuzzFeed cannot not be liable for Complex's actions merely by virtue of its formal ownership of Complex as a subsidiary. *See Bestfoods*, 524 U.S. at 61.  There is no evidence that would give rise to any issue of fact with respect to whether Complex and BuzzFeed were "alter egos" of one another.  Similarly, all of the infringing activity arose in 2019—long before Complex and BuzzFeed ever had any corporate relationship.  *See* Adriano Decl. ¶¶ 16–17, 20. There is no evidence that Complex acted as an agent of BuzzFeed when the Edited Video was posted or that BuzzFeed had any involvement in any acts of infringement. *See IPTV Corp.*, 742 F. Supp. 2d at 1120.  Holding BuzzFeed liable for Complex's

conduct in this case would run flatly contrary to every well-established precept about corporate liability and would effectively collapse BuzzFeed into Complex as one corporation for purposes of this action.

Accordingly, because there is no issue of material fact with respect to BuzzFeed's involvement in the claims at issue, the Court should dismiss all claims against BuzzFeed with prejudice and dismiss it as a party to this action.

### D.    Complex's Infringement Was Not Willful Under the Copyright Act

A claim for willful infringement allows the Court to award actual damages or statutory damages "in a sum of not less than $ 750 or more than $ 30,000" per work infringed. 17 U.S.C. § 504(c)(1). However, if the copyright owner proves that the infringement was "willful," the court may increase the statutory damage award to $150,000 per work infringed.  *Id.* § 504(c)(2).

"A determination of willfulness requires an assessment of a defendant's state of mind." *Erickson Prods., Inc. v. Kast*, 921 F.3d 822, 833 (9th Cir. 2019) (citing *Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180, 1186 (9th Cir. 2016)).  "To prove willfulness under the Copyright Act, the plaintiff must show (1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of reckless disregard for, or willful blindness to, the copyright holder's rights." *Id.* (citations and alterations omitted).  Actual awareness means "knowledge that the defendant's conduct constitutes copyright infringement." *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1336 n.3 (9th Cir. 1990). Willful blindness means the infringer "subjectively believed that infringement was likely occurring" and "took deliberate actions to avoid learning about the infringement." *Ludvarts, LLC v. AT&T Mobility*, LLC, 710 F.3d 1068, 1073 (9th Cir. 2013).

As a legal term of art derived from the common law, recklessness is often contrasted with negligence.  *Kast*, 921 F.3d at 833 ("Negligence is a less culpable mental state than actual knowledge, willful blindness, or recklessness, the three mental states that properly support a finding of willfulness.").  Negligence is typically

described as a "should have known" standard. *See Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 770 (2011); *see also BMG Rights Mgmt. (US) LCC v. Cox Commc'ns, Inc.*, 881 F.3d 293, 310 (4th Cir. 2018) ("The formulation 'should have known' reflects negligence"); *Swinton v. Potomac Corp.*, 270 F.3d 794, 803 (9th Cir. 2001) (noting that "should have known" is a negligence standard).   In contrast, recklessness requires actual knowledge of a "substantial and unjustified risk of [] wrongdoing." *Kast*, 921 F.3d at 834.   As the Ninth Circuit has explicitly stated, "constructive knowledge" of infringement is not sufficient. *Id.* at 834 & n.10.

The material facts on this issue are straightforward.   On October 3, 2019, Amaya posted the Edited Video to the Complex Instagram Account that had been circulating online for months, including on Instagram through third-party accounts, and credited Plaintiff by tagging his Instagram account.   ECF No. 42 ¶ 2.   Either the same day or immediately afterward, Breskin, who had worked as a part-time intern and started posting content to the Complex TikTok Account, cross-posted the same Edited Video with no need to inquire as to the provenance of the Edited Video because all he did was cross-post content that had already appeared on the Complex Instagram Account. *Id.* ¶ 3; Adriano Decl. ¶¶ 17, 12–13.   Neither Amaya nor Breskin provided any testimony stating, or even suggesting, that they did so with knowledge that Plaintiff asserted a copyright in the Edited Video, knowledge that their acts constituted or likely constituted infringement, or that they made any deliberate attempt to avoid learning of any copyright or infringement.   To the contrary, Amaya affirmatively "tagged" Plaintiff in the post—an act flatly inconsistent with any subjective knowledge that infringement was likely occurring—and Breskin simply cross-posted the Edited Video after Amaya had already posted it, relying fully on Amaya's state of mind when posting the same. ECF No. 42 ¶¶ 3–4; Adriano Decl. ¶ 9, 12–13.

There is also no evidence suggesting that Amaya (or Breskin through Amaya) acted with conscious disregard to Mr. Kuckenbaker's rights or with actual knowledge that his actions posed a substantial and unjustified risk of infringement when he

originally posted the Edited Video. Plaintiff's only support for this proposition appears to be that Complex, as a media company, should have known better or trained its employees more rigorously. These assertions, at best, establish no more than a "should have known" argument; that is, ordinary negligence. *Kast*, 921 F.3d at 833. Both Amaya and Breskin testified that they simply did not recall posting the content, and they had never seen Plaintiff's Vimeo page, which contained a statement about licensing the content. Therefore, the only record evidence is that the Edited Video appeared on Complex's social media pages around October 3, 2019, in the same form and with the same captioning and attribution to Plaintiff as had appeared on the @ifyouhigh post, months earlier.

As is obvious from viewing the @ifyouhigh post, there was nothing in the Edited Video suggesting it was subject to a valid copyright or that distinguished it from the millions of similar, short clips that freely circulate social media platforms daily without the risk of infringement. *See* COMPLEX NATIVE 00003 (submitted directly to the Court with a notice of lodging). Creators commonly encourage the circulation of these short videos in an effort to "go viral," and they have become ubiquitous on Instagram, TikTok, and other social networks. Adriano Decl. ¶ 26. There is no testimony stating or even suggesting that Amaya and Breskin had a subjective knowledge that infringement was likely and recklessly ignored it. *Id.* ¶¶ 27–28. The facts that Complex separately produces its own content or that its Social team members generally know about copyright and sometimes inquire for permission to post other pieces of content are both irrelevant and insufficient. *Davis v. Pinterest, Inc.*, No. 19-CV-07650-HSG, 2021 WL 879798, at *3 (N.D. Cal. Mar. 9, 2021) ("[W]illful blindness, as a proxy for knowledge, still requires allegations that Defendant was willfully blind *to the specific instances of infringement* at issue in the case, and not just to copyright infringement generally." (emphasis added)).

Plaintiff cannot rely on pure speculation to suggest that Complex was aware of Plaintiff's rights or a substantial and unjustified risk of infringement. Rather, Plaintiff

must come forward with actual evidence that suggests Amaya or Breskin knew it was likely that posting the Edited Video would constitute copyright infringement, and that evidence is simply nowhere to be found. *Tucson Elec. Power Co. v. Pauwels Canada Inc.*, 651 F. App'x 681, 682 (9th Cir. 2016) ("The party opposing summary judgment bears the burden to produce some evidence, other than speculation or guesswork sufficient to create a genuine dispute of material fact." (quotation marks omitted)). Without any evidence of intent or knowledge, Plaintiff cannot present any triable issue of fact with respect to willfulness.

### E.   Complex Never Edited, Removed or Falsified CMI

Section 1202 of the DMCA broadly prohibits third parties from falsifying, removing, or altering CMI from copyrighted works.  17 U.S.C. § 1202(a), (b).  CMI includes information that provides notice to the public that a work is copyrighted, such as information identifying the author or owner.  *Id.* § 1202(c); *Fashion Nova, LLC v. Blush Mark, Inc.*, No. CV22-6127-RSWL-RAOx, 2023 WL 2540418, at *3 (C.D. Cal. Mar. 15, 2023).  However, in addition to showing that the defendant removed or altered CMI from a work, a plaintiff must also satisfy the DMCA's "double scienter requirement," which requires the plaintiff to prove that the defendant: (i) intentionally removed or provided false CMI; *and* (ii) did so with the intent or knowledge that doing so would "induce, enable, facilitate, or conceal an infringement."  *Krechmer v. Tantaros*, 747 F. App'x 6, 9 (2d Cir. 2018); *Logan v. Meta Platforms, Inc.*, ___ F. Supp. 3d ___, 2022 WL 14813836, at *9 (N.D. Cal. Oct. 25, 2022).

"This scienter element demands specific proof."  *Schneider v. YouTube, LLC*, ___ F. Supp. 3d ___, 2023 WL 3605981, at *12 (N.D. Cal. May 22, 2023).  The Ninth Circuit has held that it is not enough to assert that "because one method of identifying an infringing photograph [i.e., CMI] has been impaired, someone might be able to use their photographs undetected. That assertion rests on no affirmative evidence at all; it simply identifies a general possibility that exists whenever CMI is removed."  *Stevens v. Corelogic, Inc.*, 899 F.3d 666, 673 (9th Cir. 2018) (emphasis in original).  In other

words, "[a] 'generic' assertion that a 'general possibility' of infringement exists because CMI was removed 'won't wash.'" *Schneider*, 2023 WL 3605981, at \*12 (citing *Stevens*, 899 F.3d at 673–74).

Here, there is no evidence to suggest that Complex edited the video or that it did so with the intent *both* to remove CMI and to enable or conceal infringement. First, the mere fact that the original Video contained CMI that did not appear in the Edited Video—especially when the Edited Video was available widely across the Internet beforehand and Defendants have identified the specific source of the Edited Video—does not give rise to any inference that Complex actually engaged in any editing. Any argument that Plaintiff might make to the contrary would be based on complete speculation and would be flatly insufficient. *See McIndoe v. Huntington Ingalls Inc.*, 817 F.3d 1170, 1173 (9th Cir. 2016) ("Arguments based on conjecture or speculation are insufficient" to create a genuine dispute of material fact sufficient to defeat summary judgment."). Indeed, though it is not necessary for Complex to prove the same given Plaintiff's abject lack of evidence, the evidence that does exist suggests the Edited Video was edited by another party before Complex ever obtained it, and Complex simply reposted the already-edited content. *See* ECF No. 42 ¶¶ 2–3; Adriano Decl. ¶ 15–16 & Ex. C.

Second, the evidence shows that Complex credited Plaintiff in the caption of its own post, which directed users to Plaintiff's Instagram page as the purported creator of the content. *See* ECF No. 42 ¶¶ 2. If Amaya (or any other person's) intent in removing or altering CMI was to enable or conceal further infringement, there would be no reason to credit Plaintiff at all. Thus, the limited documentary evidence suggests only that Amaya intended to credit Plaintiff as the creator, not that there was any intent to promote or conceal infringement generally.

A claim under § 1202 requires "specific proof," and in short, there is a complete absence of evidence as to every element. Accordingly, Plaintiff's claim for CMI removal under the DMCA is meritless and should be dismissed.

1

## V.    <u>CONCLUSION</u>

2        For the foregoing reasons, Defendants respectfully request that the Court dismiss

3 Plaintiff's claim for willful infringement and CMI removal under the DMCA with

4 prejudice.  Defendants also request that the Court dismiss BuzzFeed from this case in

5 full.

6

7 Dated:  July 17, 2023         WARGO, FRENCH & SINGER LLP

8                  By:  */s Jeff Williams*

9                     JEFFREY N. WILLIAMS

10         Attorneys for Defendants BuzzFeed, Inc. and

11         Complex Media, Inc.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28